UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROBERT E. GARCIA, *pro se*,

            Plaintiff,

    - against -

MICHAEL F ALK, Area Supervisor, Queens
Parole III*;* PAROLE OFFICER MRS. AMES;
PAROLE OFFICER MR. V. SUERO;
SR. PAROLE OFFICER MR. R. CHONG; and
SR. PAROLE OFFICER C. BENJAMIN,

            Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
**09-CV-2045 (DLI)(LB)**

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se*[1] plaintiff Robert Garcia ("Plaintiff") brings this *pro se* action pursuant to 42 U.S.C. § 1983 against Parole Supervisor Michael Falk, and Parole Officers Ames, Suero, Chong, and Benjamin (collectively, "Defendants"). Plaintiff alleges Defendants violated his constitutional rights by administratively imposing and enforcing a term of post-release supervision ("PRS"). Defendants assert qualified immunity and move to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that Plaintiff's claim fails as a matter of law because: (1) it is barred by the statute of limitations; (2) Defendants are entitled to qualified immunity; and (3) Defendants were not personally involved in the alleged constitutional violation. (*See* Defendants' Mem. of Law in Supp. of Motion to Dismiss ("Defs. Mot. to Dismiss"), Docket Entry No. 13-2, at 5-21.) Plaintiff also moves to amend his pleading. The Court referred

---

[1] In reviewing the complaint, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the Court interprets the complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

Defendants' motion to dismiss to the Honorable Lois Bloom, United States Magistrate Judge, for a Report and Recommendation ("R & R").

On March 11, 2011, the magistrate judge issued an R & R recommending that the Court grant Defendants' motion to dismiss in part and deny it in part. Plaintiff and Defendants submitted timely objections to the R & R. (*See* Plaintiff's Objections to R&R ("Pl. Obj."), Docket Entry No. 35; Government's Objections to R&R ("Gov't Obj."), Docket Entry No. 34.) Having reviewed the R & R and the parties' timely objections thereto, the Court adopts in part and modifies in part the recommendations contained in the R & R, for the reasons set forth below. Accordingly, Defendants' motion to dismiss is granted in part and Plaintiff's motion for leave to amend is denied without prejudice.

## BACKGROUND

**I.      Legal Background**

In 1998, the New York legislature enacted "Jenna's Law," which requires the imposition of PRS "as a mandatory follow-up period to a determinate sentence for violent felony offenders." *State v. Myers*, 22 Misc. 3d 809, 812-13(Sup. Ct. Albany Co. 2008); *see also* N.Y. Penal Law § 70.45 (1999) ("Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision."). For several years after the enactment, if the sentencing court did not impose a period of PRS at the time it imposed a determinate sentence, the Department of Correctional Services ("DOCS") imposed post-release supervision administratively and New York appellate courts consistently upheld that administrative imposition of PRS. *See, e.g.*, *Collins v. State*, 69 A.D.3d 46, 50 (4th Dep't 2009) (citations omitted); *Myers*, 22 Misc. 3d at 811, 812-13.

On June 9, 2006, the United States Court of Appeals for the Second Circuit applied the seventy-year-old United States Supreme Court decision in *Hill v. United States ex rel. Wampler* and held that DOCS's imposition of extra-judicial sentences of PRS violated federal law. *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006). Nevertheless, following the Second Circuit's decision in *Earley*, three of the four appellate departments in New York continued to uphold the administrative imposition of PRS. *Myers*, 22 Misc. 3d at 813 n.9 (listing several cases from the first, third, and fourth appellate departments (citations omitted)).

In April 2008, approximately two years after *Earley*, the New York Court of Appeals held in *Garner v. N.Y. State Dep't Corr. Servs.*, 10 N.Y.3d 358 (2008) and *People v. Sparber*, 10 N.Y.3d 457 (2008), that PRS imposed by anyone other than a judge violates New York State law. *See Garner*, 10 N.Y.3d at 362. After these Court of Appeals decisions, there was significant confusion in the lower New York State courts "about what to do if the prisoner was already released on PRS" because "*Garner* and *Sparber* did not provide much guidance." *Mickens v. State*, 25 Misc. 3d 191, 196-97 (N.Y. Ct. Cl. 2009). However, in June 2008, the New York State legislature enacted section 601-d of the Correction Law, which "provide[s] a mechanism for courts to consider resentencing defendants serving determinate sentences without court-ordered post-release supervision terms." *People v. Williams*, 14 N.Y.3d 198, 206 (2010); *see also Mickens*, 25 Misc. 3d at 198.

## II.     Factual Background

On March 14, 2000, Plaintiff was convicted of attempted robbery in the second degree and sentenced to three and a half years' imprisonment. (Complaint, Docket Entry No. 4-3, at 3; Declaration of Michael Arcati ("Defs. Decl."), Docket Entry 13-2, Ex. C ("Certificate of Release").) On November 27, 2001, Plaintiff was released to parole. (Certificate of Release at

3

1.) Despite the sentencing court's silence as to the imposition of PRS, DOCS administratively imposed a period of five years of PRS pursuant to Section 70.45 of the New York Penal Law. (*Id.*; Compl. at 3.) Plaintiff states that he "was given illegal 5 years post release supervision from a 2000 conviction which caused a heavy burden on [his] life." (Compl. at 3.) It appears that Plaintiff was incarcerated at Rikers Island from at least November 2004 to September 2005 for violating PRS. (*ld.* at p.5.) Plaintiff was resentenced on January 20, 2009 pursuant to Section 601-d and the sentencing judge did not impose a term of PRS.

## DISCUSSION

### I. Legal Standard

When a party objects to a report and recommendation, a district judge must make a *de novo* determination with respect to those portions of the report and recommendation to which the party objects. *See* Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F. 3d 34, 38 (2d Cir. 1997). If, however, a party makes conclusory or general objections, or attempts to relitigate the party's original arguments, the court will review the report and recommendation for clear error. *See Robinson v. Superintendent, Green Haven Corr. Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

### II. Analysis

#### a. The R & R

The magistrate judge recommends that the Court grant Defendants' motion to dismiss on qualified immunity grounds as to Plaintiff's pre-*Earley* claims. (R & R at 6-7.) Though Plaintiff

alleges that Defendants violated his rights in 2001 when DOCS administratively imposed PRS, and again between November 2004 and September 2005 when he was incarcerated at Rikers Island for violating PRS, the magistrate judge reasoned that because this conduct all occurred before *Earley*, Defendants are entitled to qualified immunity for these claims because the right at issue was not yet clearly established. The Court agrees and the R & R is adopted on this ground.

With regard to Plaintiff's post-*Earley* claims, the magistrate judge recommends that the Court find that, "[t]o the extent plaintiff claims that defendants violated his constitutional rights by holding him in custody for the 204 days that elapsed between the passage of Section 601-d and his resentencing, the instant record does not establish a basis for qualified immunity." (R &R at 7.) Defendants object to this conclusion, arguing that the magistrate judge erred by: (1) assuming facts not alleged in the complaint related to Plaintiff's period of incarceration; (2) concluding that any defects in the complaint regarding Defendants' personal involvement were insufficient for dismissal; and (3) finding that Defendants are not entitled to qualified immunity for the period after the enactment of 601-d. (Defs. Mot. to Dismiss at 11-17.) Upon a *de novo* review, the Court adopts the recommendation of the magistrate judge that Defendants have not met their burden of proof on the affirmative defense of qualified immunity after the post 601-d period, but modifies the R & R to deny qualified immunity for Defendants' conduct post-*Early* but pre-*Sparber* and *Garner*.

**b. Plaintiff's Factual Allegations Regarding PRS and Incarceration**

Plaintiff alleges in his complaint that the events giving rise to his claim occurred "[f]rom 2001 to 2004, 2005 up to Jan 19 2009." (Compl. at 2.) Plaintiff also alleges that he was "being unlawfully imprisoned and illegally detained on a post release supervision violation." (*Id.* at 5.) He notes, "This violation occurred from November 2004 to September 2005 on Rikers Island

5

A.M.K.C. correctional facility . . . and I just finished getting the illegal post release lifted on Jan. 19th 2009." (*Id.*) In his opposition brief, Plaintiff also claims that "he was illegally detained because of [an] illegally imposed PRS violation from November 2004 to September 2005 . . . [and] further held on PRS until 2009 before it was decided that the PRS was null and void." (Plaintiff's Opposition to Defendants' Mot. to Dismiss, Docket Entry No. 25, at 2.)[2] The Uniform Sentence and Commitment report attached to Defendants' motion to dismiss is ambiguous regarding whether Plaintiff was in custody at the time of resentencing in January 2009. (Defs. Decl., Ex. B.) Based on these alleged facts and a liberal construction of Plaintiff's papers, the magistrate judge assumed that "[P]laintiff was held in custody on a PRS violation until he was resentenced on January 20, 2009." (R & R at 7.)

Defendants now take issue with whether the abovementioned facts support the magistrate judge's conclusion that Plaintiff was in custody on a PRS violation for the 204 days between the passage of Section 601-d on June 30, 2008 and his resentencing. (*See* Defs. Mot. To Dismiss at 12.) Defendants do not contest that the alleged facts in the complaint support that Plaintiff was in DOCS's custody as a result of his PRS sentence from November 2004 to September 2005. (*See id.* at 12.) Defendants do contend, however, that "Plaintiff does not allege that he was in DOCS' custody pursuant to his PRS term after September 2005. Furthermore, Plaintiff's PRS term was supposed to conclude in late 2007." (*Id.* (citing Certificate of Release).)

---

[2] The Court is permitted to consider Plaintiff's factual allegations within his opposition papers. Generally, "[c]ourts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. Jan. 26, 2010) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Nevertheless, "the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where . . . those allegations are consistent with the complaint." *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998) (collecting cases); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that although a court generally should refrain from considering matters outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion").

Defendants maintain that "[t]here are only two possible ways for Plaintiff's PRS term to extend to January 2009." (Defs. Mot. to Dismiss at 13 (arguing that "(1) he absconded from parole supervision; and/or (2) he was incarcerated for new a conviction").) In short, they argue, "Even though Plaintiff was resentenced in January 2009 to sentence without PRS, there are no facts in the Complaint to support a conclusion that Plaintiff was in DOCS' custody serving a PRS term after November 2006." (*See* Defs. Mot. To Dismiss at 12.) The Court disagrees.

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citation omitted and emphasis in original.) Additionally, in considering a Rule 12(b)(6) motion to dismiss, all non-conclusory factual allegations are accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and all reasonable inferences are drawn in favor of the plaintiff. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that, even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally.") However, the liberal pleading standard accorded to *pro se* litigants "is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson v. Sheriff's Dep't*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980).

Applying the liberal reading afforded to *pro se* plaintiff's pleadings and interpreting Plaintiff's complaint to raise the strongest arguments it suggests, the Court finds that Plaintiff has alleged facts sufficient to conclude that DOCS either held him in custody for a PRS violation or otherwise enforced a PRS sentence against him after November 2006 and until January 20, 2009. While facts to the contrary may rise as the case proceeds with discovery, nothing in the current record definitively refutes Plaintiff's allegations.

### c. The Sufficiency of the Allegations of Personal Involvement

In his complaint, Plaintiff alleges that Defendants were personally involved in the unlawful imposition and enforcement of a term of PRS on him by placing Defendants' names under a question that asks "Was anyone else involved?" (*See* Compl. at 3.) In their motion to dismiss, Defendants argue that "[t]hese allegations are insufficient to allege personal involvement by Defendants and are legal conclusions unsupported by well-pleaded, facts that 'are not entitled to the assumption of truth.'" (Defs. Mot. to Dismiss at 20 (citing *Iqbal*, 556 U.S. at 1949-50).) In recommending that the Court deny Defendants' motion to dismiss on personal involvement grounds, the magistrate judge stated that, "[a]lthough the individual parole officers named herein may not have been personally involved in plaintiff's post-Section 601-d incarceration, it is difficult to determine under these particular circumstances who the appropriate defendants would be without conducting discovery." (R & R at 8.) The magistrate judge also noted that, "any defect regarding personal involvement could 'potentially be remedied by amendments to the pleadings even if the motion [to dismiss] were granted.'" (R & R at 8-9 (citing *Ruffins v. N.Y. State Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 390 n.1 (E.D.N.Y. 2010) (declining to address defendants' personal involvement argument until after supplemental briefing on qualified immunity)).) Defendants object to this recommendation and argue that it is "contrary to the clear holding of the United States Supreme Court in *Iqbal* that a complaint cannot be upheld by a court for the sole purpose of continuing discovery." (Defs. Obj. at 14-15 (citing *Iqbal*, 556 U.S. at 663).) The Court finds Defendants' objection unavailing.

To state a constitutional tort claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 663. Even after *Iqbal*, a supervisor may be held liable for constitutional torts not

8

only if she commits the tort herself, but if she "created a policy or custom under which unconstitutional practices occurred." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[3] Indeed, in *Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010), which was decided more than a year after *Iqbal*, the Second Circuit explained that "a supervisory official may be liable under section 1983 not only because he or she created a policy or custom under which unconstitutional practices occurred, but also because he or she allowed such a policy or custom to continue.'" *Scott*, 616 F.3d at 108-09 (quoting *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).

Regardless of precisely how the Second Circuit decides to apply *Iqbal*, Plaintiff has pled sufficiently detailed and plausible facts to support his allegation that, in the period after *Earley*, each of the Defendants personally implemented the policies and practices that led to the deprivations of Plaintiff's constitutional rights. (*See* Compl. at 3.) In accordance with a liberal construction of Plaintiff's allegations, Defendants were officials individually responsible for enforcing DOCS's policy with respect to PRS — policies that arguably led directly to Plaintiff's unlawful custody. (*Id.*) Given Defendants' supervisory positions, the allegation that they were among the relevant enforcers is plausible. Accordingly, these claims allege sufficient personal involvement to survive a motion to dismiss.

---

[3] Colon described five categories of actions that might expose a supervisor to liability for constitutional torts. Plaintiff's claim falls under the third *Colon* category, which establishes liability for supervisors who "created a policy or custom under which unconstitutional practices occurred." *Colon*, 58 F.3d at 873. The Second Circuit has not yet addressed the issue. *See Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), 'may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations.'" (citing *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)). District courts agree that category three has survived *Iqbal*. *See, e.g.*, *Delgado v. Bezio*, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011); *Qasem v. Toro*, 737 F. Supp. 2d 147, 152 (S.D.N.Y 2010); *Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009).

**d. Defendants are Entitled to Qualified Immunity for Pre-*Earley* Claims, But Not for Post-*Earley* Claims**

As the Second Circuit has explained,

> Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

*Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (internal quotation marks, citations, and alterations omitted). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (citation and alterations omitted). Here, Defendants contend that the magistrate judge erred in finding that Defendants are entitled to qualified immunity only until the passage 601-d on June 30, 2008. (*See* Defs. Obj. at 15; R & R at 7-8.) In support of their argument for qualified immunity after June 30, 2008, Defendants rely on *Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010) and *Rivers v. Fischer*, 390 F. App'x 22 (2d Cir. 2010).

In *Scott*, the Second Circuit held that, even though DOCS's administrative imposition of a term of PRS violated the due process right of plaintiff Scott, *Earley* had not been decided at the time of the alleged violation and, thus, the judicial proscription against administratively imposed terms of PRS was not clearly established constitutional law at the time of the DOCS' action in the case. *See Scott*, 616 F.3d at 107. In finding that DOCS officials were entitled to qualified immunity because their action predated *Earley*, the *Scott* court held that plaintiff Scott did not

10

plead sufficient facts to demonstrate that DOCS's actions after *Earley* showed deliberate indifference to Scott's known constitutional rights, *i.e.*, a failure to release Scott from custody or failure to seek her resentencing. *Id.* at 109-111. The *Scott* court also noted that "[u]nder New York law, DOC was not obligated affirmatively to seek resentencing for defendants with administratively-imposed PRS until 2008, when New York Correction Law § 601-d became effective." *Id.* at 111.

In *Rivers*, the Second Circuit issued a summary order that held the defendants were entitled to qualified immunity for the two-month period plaintiff Rivers was held in custody on a PRS violation before being resentenced pursuant to Section 601-d. 390 F. App'x at 24. The *Rivers* Court remarked that, "[e]ven after *Earley*, however, it was not clearly established that Rivers had the right to be immediately released from custody." *Id.* at 24 (citing *Earley*, 451 F.3d at 77). The *Rivers* Court concluded that, because "Rivers was brought before a judge and released less than two months [after the enactment of 601-d]. . . . [and] [g]iven the ambiguity in the law between *Earley* and the time of Rivers's release," the defendants were entitled to qualified immunity. *Rivers*, 390 F. App'x at 24.

Defendants, relying on *Earley*, *Scott*, and *Rivers*, contend they are entitled to qualified immunity for their alleged conduct before and after *Earley*. (Defs. Mot. to Dismiss at 18.) Defendants allege that they followed clearly established law, and, "[i]n response to the change in the law on how PRS was to be imposed and the mandated remedy, [DOCS] per Correction Law § 601-d had the sentencing court review Plaintiff's sentencing proceeding. . . . [and] Plaintiff received the statutory remedy under Correction Law § 601-d when his sentencing court resentenced Plaintiff without PRS." (*Id.* at 19.) The magistrate judge rejected this contention and noted that *Scott* only supports qualified immunity for pre-*Earley* actions and *Rivers*, as a

11

summary order, does not have precedential effect and, therefore, did not control. (R & R at 6-7.) The Court agrees.

Defendants' argument that "[b]oth Scott and Rivers make clear that the Defendants are entitled to qualified immunity for any period Plaintiff was re-incarcerated and thereafter for the PRS term he served until he was resentenced in January 2009" is unpersuasive, as both cases are of limited relevance here. (*See* Def. Obj. at 15.) First, the magistrate judge's finding regarding *Scott*'s applicability to solely pre-*Earley* claims is supported by the case itself, where the Second Circuit specifically noted that "the [plaintiff's] challenge is directed at the administrative imposition of PRS, not the failure to take action to remove it after it was imposed." *Scott*, 616 F.3d at 108. Second, the magistrate judge's conclusion that *Rivers* lacks precedential effect is accurate. *See* 2d Cir. R. 32.1.1(a) ("Rulings by summary order do not have precedential effect."). Moreover, in *Rivers*, the court dealt with a brief two-month window immediately *after* the passage of 601-d, during which time presumably hundreds, if not thousands, of state cases were under review. Lastly, the Second Circuit's decision in *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013) provides dispositive guidance on these issues by clarifying when Plaintiff's due process right regarding administratively imposed PRS was clearly established for qualified immunity purposes.

The *Vincent* court held that "*Earley I* itself, decided on June 9, 2006, did clearly establish the unconstitutionality of the administrative imposition or enforcement of postrelease conditions that were not judicially imposed." 718 F.3d at 160.[4] The *Vincent* court added that "Defendants

---

[4] The *Vincent* court refers to *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006) as "*Earley I*." The Second Circuit denied New York State's petition for rehearing. *See* 462 F.3d 147 (2d Cir. 2006). The State argued that "New York law automatically includes a period of PRS in every determinate sentence," *id.* at 148, and that "New York courts regularly fail to inform defendants of mandatory PRS terms but consider them part of those defendants' sentence nonetheless," *id*. at 150. The Second Circuit explained that regardless of "[w]hatever conceptualization [New York State] has about the function of New York Penal Law sections 70.00 and 70.45, they cannot operate to undermine protections contained in the Federal Constitution." *Id.* at 150.

[who are officials and employees of the DOCS and the New York State Division of Parole] do not--and could not plausibly--argue that *Earley I* itself was ambiguous." *Id.* at 168. The *Vincent* court also noted that the Second Circuit had "left unanswered in *Scott* '[w]hether *Earley* itself sufficed clearly to establish the unconstitutionality of administratively imposed PRS for a reasonable New York State correctional official' in light of decisions issued by courts of the New York Appellate Division that 'thereafter continued to find the practice constitutional.'" *Id.* (citing *Scott*, 616 F.3d at 107). In response to that open question, the *Vincent* court unequivocally stated, "Today, we answer *Scott's* question in the affirmative." *Vincent*, 718 F.3d at 169. Moreover, in response to the argument that decisions by some of the New York State courts subsequent to *Earley I* had cast doubt on *Earley I's* holding, the *Vincent* court noted that, while some state court decisions rejected *Earley I* and others distinguished it, "none of the state court decisions cited by defendants demonstrate[d] any confusion about whether *Earley I* prohibited DOCS from imposing PRS." *Id.* Most notably, the New York State Legislature resolved this issue by the passage of 601-d.

In sum, the *Vincent* Court's holding directly undercuts Defendants' contention in the instant case that, "based on the holdings in <u>Earley</u>, <u>Scott</u>, and <u>Rivers</u>, a parolee is not entitled to be released from PRS obligations (even if the parolee was reincarcerated) until the parolee was resentenced by a court pursuant to § 601-d." (Def. Obj. at 16.) The *Vincent* court rejected this very argument and made clear that the availability, or lack thereof, of a state procedure, such as Section 601-d, or a change in state law does not limit the reach of federal law. The *Vincent* court explained:

> As a general matter, "[f]ederal constitutional standards rather than state law define the requirements of procedural due process. . . . '[T]he fact that the State may have specified its own procedures that it may deem adequate for . . . official action,' . . . does not settle what protection the federal due process clause

13

requires." *Russell v. Coughlin*, 910 F.2d at 78 n.1 (quoting *Vitek v. Jones*, 445 U.S. 480, 491, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980)). State court decisions that rejected *Earley I's* holding could not disestablish the federal right to due process for the purposes of qualified immunity analysis. *See, e.g.*, *Hopkins v. Bonvicino*, 573 F.3d 752, 772 (9th Cir. 2009) ("[A] decision by a state court contrary to a holding of this court cannot unsettle or 'de-establish' the clarity of federal law" because "we begin our inquiry by looking to binding precedent [and i]f the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." (emphasis in *Hopkins*) (other internal quotation marks omitted)). Because *Earley I's* explicit ruling that "New York's Department of Correctional Services has no . . . power to alter a sentence" clearly established the contour of the right plaintiffs seek to vindicate, our inquiry ends there.

*Vincent*, 718 F.3d at 169-170 (internal citations and quotations omitted). Accordingly, "[t]he fact that it was not until 2008 that the New York State Court of Appeals declared the administrative imposition of PRS on prisoners who had not been so sentenced judicially to be unlawful under State law, however, did not affect the invalidity of such impositions under federal law, which was announced in *Earley I* in 2006. State and local officials are required to comply not just with state law but with federal law as well." *Id.* at 170. In light of the Second Circuit's holding, the determinative time for considering whether Defendants' conduct is entitled to qualified immunity is not the June 2008 enactment of 601-d or the April 2008 New York State Court of Appeals decisions in *Sparber* and *Garner* striking down the administrative imposition of PRS, but rather is the issuance of the *Earley* decision in June 2006.

At this point of the litigation, Defendants have failed to meet their burden of proving qualified immunity for their actions after *Earley*. *See id.* at 166 (noting that qualified immunity is an affirmative defense for which the defendant officials bear the burden of proof). Based on the abovementioned facts and case law, the magistrate judge correctly concluded that, "[a]s the right in question, to be resentenced under Section 601-d, was clearly established after June 30, 2008, defendants' instant motion to dismiss based on qualified immunity for the post-Section

14

601-d period should be denied." (R & R at 8.) This recommendation is hereby adopted. The magistrate judge also found that Defendants would be entitled to qualified immunity on claims regarding Defendants' conduct after *Earley*, but before *Sparber* and *Garner*. (*Id.* at 7 n.5.) In light of *Vincent*, which was decided after the R & R was issued, the R & R is modified because Defendants are only entitled to qualified immunity until June 9, 2006, the date of the *Earley* decision.

### e. Defendants' Tort is Not Properly Before the Court

Defendants also object to the R & R because it failed to address Defendants' argument that "the Complaint must be dismissed because it failed to allege sufficiently the elements of a tort cause of action under New York State tort law." (Defs. Obj. at 17.) Defendants first raised this argument in their reply memorandum. (Defendants' Reply Mem., Docket Entry No. 30, at 8-9.) However, the Court need not consider arguments raised for the first time in a reply brief. *See, e.g.*, *Howard v. Cannon Indus., Inc.*, 2012 WL 5373458, *4 n.4 (W.D.N.Y. Oct. 30, 2012) (citing *In re Dobbs*, 227 F. App'x 63, 64 (2d Cir. 2007) ("[W]e think that it was entirely proper for the [court] to decline to consider . . . argument[s] raised for the first time in [a] reply brief")); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012) (noting "that arguments raised for the first time in reply . . . because the plaintiffs had no opportunity to respond to those new arguments."). Accordingly, the Court will not address this argument.

### f. Plaintiff's Request for Leave to Amend

The magistrate judge recommended that Plaintiff's motion to amend should be denied without prejudice, because his proposed amended complaint does not advance his claim regarding the 204 days he was held in custody prior to his resentencing pursuant to Section 601-d. (R & R at 9.) While Plaintiff submitted an objection to this recommendation, the objection in

fact acknowledged the shortcoming of his request for leave to amend and asked the Court to accept a "proposed amended complaint with the objections under Rule 15(a) of the Federal Rules of Civil Procedure at this time concerning his complaint and claim regarding the 204 days he was held in custody." (Pl. Obj. at 1.) As noted above, Plaintiff's claim for this time period has survived the motion to dismiss stage. Accordingly, Plaintiff's motion for leave to amend is denied without prejudice.

## CONCLUSION

For the foregoing reasons, the R & R is adopted in part and modified in part. Accordingly, Defendants' motion to dismiss is granted in part and Plaintiff's motion to amend is denied without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
      March 30, 2015

                                              /s/
                                        DORA L. IRIZARRY
                                   United States District Judge